Welch, J.
The plaintiff in error was indicted for forging and altering (and also for uttering), a one dollar note on the Southern Bank of Kentucky. The note was in the usual form of bank bills, containing a promise “ to pay to the bearer on demand one dollar.” Large figures “ 1 ” were printed in the margin of the bill in the ordinary form, at two of its corners, so as to form no necessary part of the legal note, which was complete without the figures. The alteration charged in the indictment, consisted in cutting out the words “ one dollar” from the body of the note, and artfully fitting blank paper in the space, and in substituting figures 5 for the figures 1 at the corners.
The defendant pleaded guilty, and then moved in arrest of judgment. His motion was overruled, and he was sentenced to the penitentiary, and he now prosecutes this writ of error to reverse the judgment.
The' indictment contains the necessary charges of guilty knowledge, fraudulent intent, etc. Some objections are made to its form, but we do not think them valid, and deem it unnecessary to notice them here..
We have, then, the simple question: Was this an alteration of a bank note, within the meaning of the statute against making, forging, or altering bank notes ?
*456 The argument of the prisoner’s counsel. is: 1. That the figures at the corner were no part of the note. 2. That the removal of the Words “ one dollar” from the body of the note was not an alteration, but a destruction of the note. If these propositions are both true, the conviction was illegal. Are they true ?
1. Were the marginal figures part of the note? Was their alteration, an alteration of the note within the sense of the statute (22 sec. of crimes act), against “altering bank notes,” with intent to defraud? There is, as counsel contend, a complete legal note without these figures. Take them away, and the note will still read: “The bank promises to pay one dollar on demand t-o the bearer” unlimited, the effect and purport of the note is not in the slightest degree varied or affected.by them. A description of it, by its tenor, is full and perfect without them. And yet such a description is also good with them. They may be inserted, or omitted, at the discretion of the pleader. In one sense, and for certain purposes, it may be correct to say, that they are no part of the ■note; but in a general sense, and for all purposes, it seems more correct to say, that they are no necessary part of the note. I can see no legal or logical difliculty, in regarding them as duplicates of the words of amount specified in the body of the note. As such duplicates, they may, while the note is whole, be omitted, or they may be set out, at pleasure. Duplications are common, as' we all know, in many instruments, and in none more so than in notes. In bank notes they are almost universal. They usually designate the most important element in the subject-matter — as the number of the lot of land in a deed, or the sum of money in a receipt or note — and are almost always, as here, a repetition in figures of what has been first stated by words. Sometimes they are contained in the text, and sometimes in the margin. They are inserted for a purpose. What is that purpose — and shall it be wholly disregarded? The object of their insertion is, to afford an easy, certain, and safe indicium of the amount or number. Perhaps the most important and direct purpose of *457 their insertion is, that they may be used as alternatives, when the original, or counterpart, shall, by accident or otherwise, become mutilated or effaced. They are very useful and valuable for that purpose, especially in bank bills, which from frequent use, and frauds, are so much exposed to mutilation. All banks employ them, and regard them as evidence of the amount of the bill, and they are frequently the only evidence of its amount. Even while the bill is perfect, it is rare that anything beyond these figures is inspected, to ascertain its amount; and when the words of amount are gone, they are always and confidently looked to for that purpose.
I am not therefore prepared to say, that an alteration of a bank note, within the meaning of the statute, may not be effected, in a proper case, by merely altering the marginal figures of the note; as where the words have been innocently obliterated, thus rendering a fraud practicable by that means alone. But the defense does not rest upon this single proposition, and it is not therefore necessary for the court directly to decide upon its truth. This note was altered in both places. The figures of amount in the margin were changed, and the words of amount in the body of the note were cut out.
2. This brings us to the second question raised: Was the destruction of these words in the body of the note, either per se, or in common with the change of the figures in the margin, an alteration of the note? Was the strict verbal note destroyed, or was it only altered?
The logic which underlies the argument of counsel for the prisoner, and which underlies his authorities to support it, is this: Forgery is the false making of an instrument. The legal making may be an original fabrication, or it may be by merely changing a thing already made into another thing. Hence, though every forgery does not include an altering, yet every altering includes a forging. In either case there must be a thing — an instrument known to the law, and to which it gives legal effect when the act is completed. If the prisoner alter a note, it must still be a note, or some other legal instrument. I concede the general truth of this logic. The very *458 word alter, retaining its original Latin form, and almost its precise original meaning, implies another; and nothing which ceases to exist, can in any proper sense be said to be altered. If it is altered, it has merely changed its form or nature, but still has an existence.
But the very question here is, has it ceased to exist ? Is the note — the strict legal note, I mean — without any vitality as a legal instrument? Has it no latent life, or dormant energy, capable of being aided and strengthened into full force by “ extrinsic circumstances ?” Without the words “ one dollar,” but in the light, and with the aid, of its surroundings, can it still be enforced as a contract of the bank, or effectually used for the fraudulent purpose prohibited by the statute ? In other words, is the note absolutely and hopelessly void for uncertainty? That is the question; and, for the purpose of answering it correctly, we must look not only at the note, but at all the circumstances surrounding its making, and particularly those which stand out upon the same paper with itself.. Equally is this true of the constructive second making effected by the alteration, as of the original making. In both, these surroundings are in law a part of the note, to be read with its words, and to have the same effect as if they had been written down, and incorporated into the body of the note itself. Now, what were the surroundings of the altered note —the new note f Pregnant among them ar.e, a blank for the sum to be paid ; and .a large “ 5” near by to fill it, standing in the place where duplicates of the amount are usually placed; and the total absence of any other word or figure to supply the omission. If the note in its altered form is utterly void, then a fortiori would it have been void had that been its original form ? For in that form it would not have been aided by the suspicion that there had been an erasure or defacement, arising from the fact that there was a space where the amount might have stood. In that form the note would have read: “ The bank promises to pay the bearer on demand.” How much would this have differed from the “ order ” which the defendant was indicted for forging in *459 the case of Carbery v. The State, 11 Ohio St. Rep. 410? The order in that case read: “ Let the bearer have one of your smallest, with load, and charge me.” And yet the court in that case hold, that the order was not absolutely void, but that, by proper innuendoes and proof of “ extrinsic circumstances,” it might be shown to be a valid “order” — for a “ pisiol”-under the same statute. It is true, the point did not necessarily arise in that case, and that the decision has only the force of a dictum, yet we are satisfied of its correctness. The court also cite approvingly the cases of Bex v. Elliott, and The State v. Dourden, in both of which the prisoners were held rightfully convicted, under circumstances almost identical with those of the present case.
The present case, however, is much stronger for the state than the Carbery case. It is stronger for three reasons: 1. In that case the question was as to the validity of the original paper. Here the question is as -to its validity in the altered form. 2. There the “ extrinsic circumstances ” by which the instrument was to be aided, were outside the paper. Here they are upon the same paper — to be seen whenever the note is read, and even before it is read; and often seen and exclusively relied upon, when the note is not read at all. 3. It is, to say the least, doubtful whether the dicta in Rex v. Elliott, and The State v. Dourden, are not the law — that these marginal figures are strictly part of the note, and that an alteration of them alone may constitute forgery of a bank note.
Surely, if the court properly held in the Carbery case that an original order “ to deliver ” might, by extrinsic proof, be sustained as an order to “ deliver a pistol,” we may well hold here that an altered bank note promising to “ pay,” may be sustained as a promise to “pay jive dollars” by the aid of the facts and figures appearing on the face of this paper.
We are of opinion, therefore, that the note, in its restricted legal sense was altered within the meaning of the statute. It was originally a promise to pay one dollar. By the alteration, it became a promise to pay merely, to be made effectual, if at all, by' facts aliunde, either supplied by the paper, or to *460 be sought elsewhere. But most clearly, in the light of both' alterations, is this the case. And they must be considered together, as they are set out in the indictment together, as parts of the same alteration. In common parlance, no one would hesitate to call this an altered bank note. It had not, in any admissible sense, ceased to be a bank note. The defendant offered it as such, and it was received from him as such; and had it been refused, it would not have been refused for any of the reasons assigned by his counsel. It would have been refused, if at all, not for the absence of sufficient words and figures to make it an obligatory note, but for the presence of ear-marks of fraud; not because it contained too little, but because it contained too much. Can it be said, in any safe sense, that to erase material words from a bank bill, and artfully to substitute figures in the margin, to take their place, so as to increase the apparent denomination of the bill, and make it effectual in that form for deception, is not within the words of the statute ? It is certainly within the mischief intended to be remedied by the statute. To hold otherwise would be virtually to repeal it, or to subject to its penalties only such as practice their frauds in an artless or bungling manner. ~W e think the prisoner was rightfully convicted.
The judgment of the common pleas is affirmed.
Brinkerhoee, C.J., and Scott and White, JJ., concuned.